IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 17-CV-2438-MSK

THOMAS A. NAGY,

    Plaintiff,

*v*.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

    Defendant.

---

**OPINION AND ORDER REVERSING THE COMMISSIONER'S DECISION**

---

**THIS MATTER** comes before the Court on the Plaintiff's Complaint (**# 1**), the Plaintiff's Opening Brief (**# 15**), the Defendant's Response (**# 16**), and the Plaintiff's Reply (**# 19**). For the following reasons, the Commissioner's decision is reversed and the matter is remanded for further proceedings.

### I.    JURISDICTION

The Court has jurisdiction over an appeal from a final decision of the Commissioner under 42 U.S.C. § 405(g).

### II.    BACKGROUND

**A.**    **Procedural History**

Thomas Nagy seeks judicial review of a final decision by the Commissioner denying his claim for disability insurance benefits (DIB) and supplemental security income (SSI) under the Social Security Act. In March 2014, Mr. Nagy filed for DIB and SSI, claiming he became disabled in May 2011. Tr. at 158–73. His application was denied at all administrative levels

and he now appeals to this Court.

**B.    Factual Background**

The Court summarizes only the medical evidence relevant to its decision.  Here, the dispositive issue concerns the weight given to the medical opinions as to Mr. Nagy's functional capacity.  At the time of his alleged onset of disability, Mr. Nagy was 42 years old.  Tr. at 158. He was previously employed as a pipe fitter, warehouse worker, and wire mesh fabricator.  Tr. at 199.  He has a history of musculoskeletal problems in his back and knees.

In May 2014, Dr. Rebecca Bub conducted a consulting examination of Mr. Nagy.  Tr. at 268–77.  Though she conducted a thorough exam of all of Mr. Nagy's systems, the relevant findings come from her musculoskeletal exam.  Tr. at 273–75.  She observed normal range of motion in his cervical spine, hip joints, ankle joints, left shoulder joint, elbow joints, wrist joints, and finger joints.  Tr. at 273–74.  She also observed significant discomfort while examining his dorsolumbar spine, which had a lower range of motion.  Tr. at 274.  Moving to his knees, she found discomfort while determining his range of motion, more so in the right knee than the left. Tr. at 274.  Ms. Nagy had a positive anterior drawer and Lachman test on the right knee, but a negative McMurray sign bilaterally.  Tr. at 274.  Examining his right shoulder, Dr. Bub observed limited range of motion and significant discomfort; Ms. Nagy had a positive Neer test and Hawkins test.  Tr. at 274.  Finally, though she noted lumbar paraspinal muscle tenderness, there was no spinous process tenderness to palpation.  Tr. at 275.

Dr. Bub also reviewed x-ray images of Mr. Nagy's lumbosacral spine and right knee. Tr. at 276.  Her impression was mild to moderate lumbar spondylosis without evidence of acute fracture or subluxation and, as to the knee, mild degenerative changes within the medial and patellofemoral compartments without evidence for acute fracture or dislocation.  Tr. at 276.

Based on these observations, she diagnosed Mr. Nagy with back pain, knee pain, and shoulder pain from a torn rotator cuff. Tr. at 276–77. She recommended physical therapy and exercise for his back, and an MRI and follow-up with a surgeon for his knee and shoulder. Tr. at 276–77. She then opined that Mr. Nagy (1) could sit between four and six hours per workday; (2) can stand only two hours per workday; (3) should walk at least two hours per workday; (4) could lift and carry "25 pounds and 5 pounds, frequently and occasionally, respectively";[1] (5) could bend, stoop, squat, crouch, or crawl occasionally; and (6) could manipulate with his fingers and arms occasionally. Tr. at 277.

In March 2014, Dr. Carlos Rodriguez, a conducted a consulting psychiatric examination of Mr. Nagy. Tr. at 261–62. Dr. Rodriguez diagnosed Mr. Nagy with a history of post-traumatic stress disorder (PTSD), major depression, and anxiety disorder. Tr. at 261–62. In this exam, however, Dr. Rodriguez largely recounted Mr. Nagy's subjective complaints and proceeded to draw conclusions and make recommendations. In June 2016, Dr. Rodriguez again examined Mr. Nagy and, this time, made a more thorough record of his examination. Tr. at 360–65. Dr. Rodriguez found Mr. Nagy oriented to person, place, time, and situation, but with deficits in attention, calculation abilities, working-memory capabilities, auditory-memory capabilities, and social judgment. Tr. at 361. He exhibited great difficulty in the Serial Seven Subtraction cognitive task. Tr. at 361. Dr. Rodriguez observed that Mr. Nagy's responses suggest the presence of low average to borderline intellectual functioning. Tr. at 361–62. Dr. Rodriguez noted that Mr. Nagy experienced multiple PTSD symptoms, including nightmares and flashbacks, as well as intrusive and disturbing thoughts about the death of his son, the genesis of

---

[1] The Court assumes Dr. Bub intended to state that Mr. Nagy can frequently lift five pounds and occasionally lift 25 pounds.

3

his PTSD. Tr. at 362–63. Dr. Rodriguez found that Mr. Nagy presented with evidence of panic attacks, onset by increased anxiety in the company of others or in crowds. Tr. at 363. Based on these observations, Dr. Rodriguez echoed his 2014 conclusions, adding panic disorder with agoraphobia. Tr. at 364. He then opined that Mr. Nagy's ability to engage in basic work-related activities including memory, understanding, sustained concentration, persistence and pace, social interaction, and adaption are moderately to significantly impaired. Tr. at 365.

Dr. Rodriguez also completed a mental residual functional capacity (RFC) evaluation. Tr. at 366–68. He opined that Mr. Nagy was moderately impaired in his ability to remember locations and work-like procedures, understand and remember very short and simple instructions, carry out very short and simple instructions, make simple work-related decisions, ask simple questions or request assistance, and travel in unfamiliar places or use public transit. Tr. at 366–67. He opined that Mr. Nagy was at least markedly limited in every other area of the evaluation: understanding and memory, sustained concentration and persistence, social interaction, and adaption. Tr. at 366–67. Additionally, he found that Mr. Nagy would be off task more than 30% of the work week and his impairments would cause absences from work more than three days per month. Tr. at 367–68.

## C. The ALJ's Decision

In May 2017, the ALJ issued a decision unfavorable to Mr. Nagy. At step one, the ALJ found that he had not engaged in substantial gainful activity since May 2011. Tr. at 17. At step two, the ALJ found that Mr. Nagy had the following severe impairments: degenerative disc disease of the lumbar spine, osteoarthritis of the right and left knees, obesity, affective disorder, and anxiety. Tr. at 17. At step three, the ALJ found that Mr. Nagy did not have an impairment that met or medically equaled the presumptively disabling conditions listed in 20 C.F.R. Part

4

404, Appendix 1. Tr. at 18. The ALJ further found that Mr. Nagy had the residual functional capacity (RFC) to perform light work with the following limitations: he can perform only occasional bending, squatting, and kneeling; he cannot use ladders or scaffolds; he can only occasionally use foot or leg controls; he cannot perform any complex task; he can only perform unskilled jobs having a specific vocational preparation (SVP) level of 2 or less; and he cannot deal with the general public and must have only occasional interaction with coworkers. Tr. at 20.

In crafting Mr. Nagy's RFC, the ALJ gave partial weight to Dr. Bub's opinion and little weight to Dr. Rodriguez's opinion. Tr. at 22–23. At step four, the ALJ found that Mr. Nagy was incapable of performing his past relevant work as a pipe fitter, warehouse worker, wire mesh fabricator, or corn cook. Tr. at 24. At step five, the ALJ found that Mr. Nagy could perform the following jobs that exist in significant numbers in the national economy: marking clerk, routing clerk, and silver wrapper. Tr. at 25. The ALJ thus concluded that Mr. Nagy was not disabled. Tr. at 26.

### III. STANDARD OF REVIEW

Although the Court's review is de novo, the Court must uphold the Commissioner's decision if it is free from legal error and the Commissioner's factual findings are supported by substantial evidence. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). Substantial evidence is evidence a reasonable person would accept to support a conclusion, requiring "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The Court may not reweigh the evidence, it looks to the entire record to determine if substantial evidence exists to support the Commissioner's decision. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

## IV. DISCUSSION

Mr. Nagy raises several challenges to the Commissioner's ruling. He contends that: the ALJ improperly evaluated the opinions of Dr. Bub and Dr. Rodriguez, (2) the ALJ's mental RFC determination is not supported by substantial evidence, and (3) the ALJ posed an improper hypothetical question to the vocational expert. Finding legal error in the evaluation of medical opinions, the Court reverses and remands the Commissioner's denial of benefits without reaching the other issues.

A treating physician's opinion must be given controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record. *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007). But if there is no opinion from a treating physician in the record, the ALJ's evaluation of the consulting examiners' opinions collapses to the factors generally considered for assessment of weight:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Allman v. Colvin*, 813 F.3d 1326, 1331–32 (10th Cir. 2016). A consulting examiner's opinion is presumptively entitled to more weight than an opinion derived from a review of the records. *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012). The ALJ may dismiss or discount an examining physician's opinion but she must do so based on the foregoing factors and must provide specific, legitimate reasons for rejecting it. *Id.* On appeal, Mr. Nagy argues that the ALJ improperly rejected parts of Dr. Bub's opinion and all of Dr. Rodriguez's opinion.

### A. Dr. Bub

As discussed above, Dr. Bub, a consulting examiner, opined that Mr. Nagy's back pain, knee pain, and shoulder pain limit him to sitting four to six hours per workday, standing two hours per workday; walking at least two hours per workday, lifting five pounds frequently and 25 pounds occasionally, bending and crouching occasionally, and manipulating with his fingers and reaching occasionally. Tr. at 277. The ALJ gave Dr. Bub's opinion partial weight:

> This opinion . . . is consistent with the claimant's testimony that he can lift 20 pounds; however, it is inconsistent with the treatment notes indicating that the claimants only physical complaints were his back and knee pain. The claimant's degenerative disc disease and osteoarthritis of the knees are consistent with the postural limitations contained in Dr. Bubb's [sic] opinion and are further reflected in the [RFC].

Tr. at 22. Viewed in light of the RFC determination, the ALJ primarily rejected Dr. Bub's opinions related to standing and walking, lifting and carrying, and manipulative restrictions. Mr. Nagy contends that the ALJ's explanation does not provide a legitimate reason for rejecting Dr. Bub's opinions.

The Court is confused by the ALJ's rationale. It is common for an ALJ to evaluate the merit of a medical opinion by comparing it to corresponding treatment notes, especially if they are inconsistent with the opinion. *See, e.g.*, *Endriss v. Astrue*, 506 F. App'x 772, 776 (10th Cir. 2012). But here, the ALJ has not cited objective medical evidence from the treatment notes as inconsistent with Dr. Bub's opinion. Rather, he refers to the absence of complaint by Mr. Nagy as to shoulder pain. Even if Mr. Nagy never complained to Dr. Bub of pain in his shoulder, Dr. Bub's medical findings that he has a limited range of motion in his shoulder and that he experienced discomfort during the exam remain unrebutted. *See* Tr. at 274. Indeed, there is no medical evidence in the record that undermines Dr. Bub's observations and opinion about the condition of Mr. Nagy's shoulder – its movement was limited and moving it caused Mr. Nagy

7

pain. The ALJ makes passing reference to "consistency with the record as a whole", but fails to point out any evidence that is inconsistent with Dr. Bub's findings. In addition, it does not address a change in Mr. Nagy's condition post-dating Dr. Bub's opinion. *See Chapo*, 682 F.3d at 1291. The ALJ thus erred in evaluating Dr. Bub's opinion. This error is not harmless because Dr. Bub's opinion that Mr. Nagy cannot lift more than five pounds frequently and 25 pounds occasionally which is consistent with Mr. Nagy's statement, but is inconsistent with an RFC permitting the full range of light work.

**B. Dr. Rodriguez**

Dr. Rodriguez, also a consulting examiner, submitted two opinions based upon two examinations two years apart. As stated, the first is largely devoid of medical findings, but the second opined that Mr. Nagy suffers from PTSD, major depressive disorder, and panic disorder. Dr. Rodriguez also opined that he has low average to borderline intellectual functioning and deficits in attention, calculation, memory, and social judgment. In addition, Dr. Rodriguez stated in his RFC evaluation that Mr. Nagy experienced marked limitations in understanding, memory, concentration, pace, social interaction, and adaption. With regard to Dr. Rodriguez, the ALJ stated:

> These opinions are given little weight, as they are largely inconsistent with the objective medical record and testimony provided by the claimant. As noted above, the claimant has testified that he does not have any difficulty with his memory. Moreover, the claimant was repeatedly found to be alert and fully oriented. Additionally, in May 2016, after beginning medication and taking it as prescribed, the claimant indicated that he was not as irritable or explosive.

Tr. at 23. Mr. Nagy argues that the ALJ mischaracterized both the medical evidence and his testimony in the decision.

As an initial matter, Mr. Nagy did not testify that does not have any difficulty with his memory. He described it as, "For the most part I guess okay." Tr. at 49. But more

8

importantly, the ALJ has again discounted a medical opinion as inconsistent with Mr. Nagy's subjective statements. Subjective statements have value when a claimant describes his activities of daily living, or other things he is qualified to discuss as a percipient witness, but a claimant's assessment of his own medical symptoms is hardly useful. Mr. Nagy's testimony, especially given its equivocal nature, is not fairly construed as inconsistent with Dr. Rodriguez' medical findings, much less sufficient to reject them. Finally, the ALJ's statement that Mr. Nagy is not as irritable or explosive after treatment is not responsive to any of Dr. Rodriguez's opinions about his memory, concentration, social interaction, or adaption.

The Court is thus left only with the ALJ's statement that the opinion is inconsistent with the objective medical record. Such statement is conclusory and fails to provide the specificity necessary for this Court to conduct a meaningful review. The Court appreciates that the Commissioner's backlog is significant, but the regulations still require the ALJ to articulate specific, legitimate reasons for rejecting the opinion, which means the ALJ must point to specific *medical* evidence that undermines the opinion. *See Chapo*, 682 F.3d at 1291. The ALJ did not do so here. This error is not harmless because Dr. Rodriguez's opinion is inconsistent with the RFC. Although the RFC restricts Mr. Nagy from being required to perform complex tasks and restricts him to unskilled jobs, it does not incorporate limitations in dealing with the general public and interaction with coworkers.

## V. CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED AND REMANDED** for proceedings consistent with this opinion. Judgment shall enter in favor of Mr. Nagy.

Dated this 2nd day of November, 2018.

BY THE COURT:

Marcia S. Krieger
Chief United States District Judge